# Vermont Women's Health Center, Rachel Atkins, Jude Sullivan and Susan A. v. Operation Rescue, et al.

[617 A.2d 411]

No. 91-035

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed July 17, 1992

Motion for Reargument Denied September 3, 1992

142

*John D. Schullenberger* and *William M. Dorsch* of *Mickenberg, Dunn, Sirotkin & Dorsch*, Burlington, for Plaintiffs-Appellees.

*Thomas E. McCormick* of *McNamara, Fitzpatrick, McCormick & Mertz, P.C.,* Burlington, *Daniel J. Lynch* of *Lynch & Hadden,* St. Albans, and *Michael Rose* (On the Brief), St. Albans, for Defendants-Appellants.

**Dooley, J.** The superior court adjudged fourteen persons (defendants) in contempt for actions, protesting abortion, taken at a women's health clinic in violation of the court's temporary restraining order (TRO). The court ordered defendants to pay damages and attorneys' fees to plaintiffs, the Vermont Women's Health Center and certain of its staff members and patients, and subjected defendants to prospective coercive fines. They appeal, claiming that (1) because only one defendant was properly served with the TRO, the court lacked subject matter jurisdiction to hold the nonserved individuals in contempt; (2) the court's findings that defendants had actual notice of the TRO and violated its terms were erroneous; and (3) the court incorrectly assessed damages and fees and improperly imposed prospective fines. We affirm.

In November 1988, the superior court issued a TRO directed to Operation Rescue, an anti-abortion organization; defendant Michael McHugh; and "all other persons, groups and organizations acting in concert with either Operation Rescue or Michael McHugh." The TRO, which was extended by the court in December 1988 and remains in effect by stipulation of the parties, prohibits the following conduct:

1. Blocking any doorway, entrance, driveway or parking lot at the Vermont Women's Health Center . . .

2. Entering or attempting to enter the building . . .

3. Directing bullhorns, shouting, yelling or otherwise verbally directing sounds to the interior of the Vermont Women's Health Center . . .

4. Physically blocking the entry of any persons to the Vermont Women's Health Center . . . .

On October 24, 1989, a group led by defendant McHugh of more than fifty persons, including the remaining defendants, physically invaded the grounds and building of the health center. They blocked doorways and exits of the building and positioned a ten-wheel truck to block the driveway. Many of them

locked themselves to one another in the hallways of the building; they made a great deal of noise singing and chanting. As a result, health services for women scheduled for that day, including cancer-related examinations and other tests, as well as abortions, were cancelled. Two police officers were injured as they attempted to enter the building through doors pulled shut by protesters. The use of mace and tear gas was ultimately required to gain entry and control. Once inside, the chief of police read the face sheet of the injunction, listing the prohibited activities, in a loud and clear voice, in each of the two main wings of the building. Police then arrested defendants and the other protesters for unlawful trespass and removed them from the building.

Plaintiffs subsequently brought a civil contempt action against defendants for violation of the TRO, serving each with copies of the court's order and the motion for contempt. Following evidentiary hearings held December 20, 1989, and January 17, 1990, the court found defendants in contempt, held them liable to plaintiffs for certain fees, costs, and damages, and subjected them to prospective coercive fines to be assessed in the event of future violations of the court's order. This appeal followed.

We address first defendants' claim that the court lacked subject matter jurisdiction to hold any of them, other than Michael McHugh, in contempt because they were not parties named in the TRO and were not properly served with the order, as required by 12 V.S.A. § 122. While service of the order was made on McHugh and the organizational defendant prior to October 24, 1989, the order was not served, prior to its violation, upon the remaining defendants other than by police officers at the health center at the time the protest was taking place.

Defendants' argument is based on the wording of 12 V.S.A. § 122, which allows for the commencement of contempt proceedings against a party for violation of a court order only if there has been "service of the order upon that party." In defendants' view, the failure to effect personal service of the TRO on defendants prior to the alleged violation deprives the court of jurisdiction to find them in contempt.

Plaintiffs' position is based on V.R.C.P. 65(d), which provides that a restraining order or injunction is binding "upon the par-

ties to the action . . . and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." The relevant language is identical to that of Federal Rule of Civil Procedure 65(d). Decisions under the federal rule and similar state rules have uniformly allowed the enforcement of injunctive decrees against unnamed parties with actual notice, where they meet the other criteria of Rule 65(d), despite the absence of formal service. See, e.g., *NOW v. Operation Rescue*, 747 F. Supp. 772, 775 (D.D.C. 1990) (citing Fed. R. Civ. P. 65(d), "it is not necessary to show formal service of the order on the non-party" with actual notice); *Bratton v. MGK, Inc.*, 587 N.E.2d 134, 136-37 (Ind. Ct. App. 1992) (upholding a finding that an abortion demonstrator was in contempt although he was not named in court's injunction and was not served individually with the order under state's rules of process); *People v. Said*, 120 A.D.2d 961, 962, 502 N.Y.S.2d 840, 841 (1986) (failure to serve defendant with copy of the order does not preclude contempt proceeding against him); *Crozer-Chester Medical Center v. May*, 366 Pa. Super. 265, 273, 531 A.2d 2, 7 (1987) ("[i]t is beyond cavil" that formal service of injunction is unnecessary for contempt judgment against individuals with actual notice).

While we are cognizant of the statutory language, the service requirement of 12 V.S.A. § 122 "is merely a procedural prerequisite to the institution of contempt proceedings." *Socony Mobil Oil Co. v. Northern Oil Co.*, 126 Vt. 160, 163, 225 A.2d 60, 63 (1966) (court order ineffective until service upon named party); see also *Horton v. Chamberlain*, 152 Vt. 351, 354, 566 A.2d 953, 954 (1989) (section 122 "imposes no limit on the persons that a court may punish for contempt"). Thus, although it requires service of a court order before it can be enforced, the statute does not limit the parties against whom it may be enforced once it is effective. Rule 65(d) allows for enforcement of injunctions against nonparties in order to ensure that parties do not use nonparties to evade compliance with the injunction. Although the TRO enforced in this case applied to persons acting in concert with the named parties, this is merely a restatement of the reach of Rule 65(d) and did not make the nonserved defendants parties to the TRO proceeding within the meaning of 12 V.S.A. § 122. Thus, we hold that § 122 does not apply to the

present circumstances at all, and it falls within the rules of procedure to define whether service was properly accomplished on the particular classes of contempt defendants.

It is reasonable for Rule 65(d) to define service on aiders and abettors, like the defendants in this case, in terms of actual notice by "personal service or otherwise." A more formal service requirement would render Vermont courts uniquely unable to enforce their orders against unnamed parties, enabling "any groups bound on violating the rights of others . . . to effectively defeat the power of the courts" by continually changing the persons acting against the injunction. *Bratton*, 587 N.E.2d at 137. See also *New York State National Organization for Women v. Terry*, 961 F.2d 390, 397 (2d Cir. 1992) ("absurd" to require clinic to foretell which individuals will, in concert with named and served parties, violate injunction, and insist on proper service of order to those individuals as prerequisite to holding them in contempt).

Defendants' next argument is that the court's findings, on which its contempt adjudication was predicated, were erroneous. V.R.C.P. 65(d) sets forth the elements necessary for enforcement of an injunction against persons unnamed in the order. Plaintiffs must show that defendants acted in concert or participation with named parties, that the order was specific and unambiguous, and that they violated the order with actual knowledge of its mandate. V.R.C.P. 65(d); 11 C. Wright & A. Miller, Federal Practice and Procedure § 2956 (1973). All defendants have stipulated that, in their actions on October 24, 1989, they acted in concert and participation with defendants McHugh and Operation Rescue in an effort to stop abortion procedures that they believed were to take place that day. The clarity of the court's order is undisputed. Defendants claim, however, that except for McHugh they lacked actual notice of the TRO on that day. Certain of the defendants further argue that their actions did not amount to a violation of the TRO's provisions.

■■■■ We first set out the standards for review of contempt orders. It is plaintiffs' burden to prove the elements of civil contempt by clear and convincing evidence. See *Martin v. Trinity Industries, Inc.*, 959 F.2d 45, 47 (5th Cir. 1992); 11 Wright & Miller, *supra*, § 2960, at 591. Once the trial court has made its

findings of fact, and in its discretion entered a judgment of contempt, we will not disturb the judgment unless the court's discretion was "entirely withheld or was exercised on grounds clearly untenable." *Persons v. Lehoe*, 150 Vt. 582, 585-86, 554 A.2d 681, 683 (1988). Even where the standard of proof is clear and convincing evidence, we will uphold trial court findings as long as there is substantial evidence to support them although they are contradicted by credible evidence. *Lincoln v. Emerson*, 137 Vt. 301, 304, 404 A.2d 508, 510 (1979); see also *In re H.A.*, 153 Vt. 504, 515, 572 A.2d 884, 890 (1990)(in termination-of-parental rights proceeding where the state must show grounds for termination by clear and convincing evidence, trial court's findings must be upheld unless clearly erroneous). We rely on the factfinder's assessment of the credibility of the witnesses and its weighing of the evidence. In *Emerson*, we explained this deferential scope of review, pointing out that even in criminal cases, with a beyond-a-reasonable-doubt standard, we take the evidence in the light most favorable to the State, and affirm a finding of guilt if the evidence fairly and reasonably supports that finding. 137 Vt. at 304, 404 A.2d at 510.

In this case, there was no direct evidence that a number of the defendants had personal knowledge of the injunction prior to their arrest, and many testified that they were unaware of the existence of the order until after they had been arrested and no longer had an opportunity to comply. The trial court determined that the circumstantial evidence put on by plaintiffs on the issue of notice was more credible than the claims and denials made by defendants. The following is a summary of evidence in the record supporting the trial court's findings.

In addition to Michael McHugh, defendant Mary Alexander admitted in her testimony to having known of the order prior to her participation in the October 24, 1989 protest. As for the other defendants, all but four—Kathryn Trudell, Richard Trudell, Ann Kenney and Jennifer Rock—were present in a part of the building in which the police chief read the order aloud. The court found that if those who were present for the reading did not hear and understand the injunction, it was because they sang and chanted in an attempt to drown out the officer's voice. In addition, each of these defendants was handed a copy of the injunction and offered a chance to leave before being arrested.

When they refused to take the copy of the injunction, a copy was placed on their person.

Kathryn Trudell was on the porch during the readings and could not hear them. She testified that she had been in court for contempt proceedings earlier in 1989 against defendant McHugh and others for a prior violation of the same injunction. The court found that her assertion that she did not understand the nature of those proceedings and remained unaware of the order was not credible.

The remaining defendants did not attend earlier court proceedings enforcing the court's order and were not present in the parts of the building where the chief read the injunction. Police witnesses testified, however, that all of the defendants were told, after the locks had been removed and defendants were free to move about, that their trespassing was in violation of a court order and that they could leave without being arrested. In addition, police placed a copy of the injunction on the person or nearby each of these defendants when they refused to take it. The court found that this was done with respect to all persons who were arrested.

This Court has not had occasion to examine the kind of notice required under V.R.C.P. 65(d). Courts in other jurisdictions operating under the same rule have held, however, that actual notice can be found based on the kind of evidence that was presented here. See, e.g., *Roe v. Operation Rescue*, 919 F.2d 857, 871–72 (3d Cir. 1990) (protester unnamed in order and not formally served could be found in contempt because she was present when order was read over bullhorn to demonstrators and she remained in violation of its provisions); *NOW v. Operation Rescue*, 747 F. Supp. at 775 (notice may be proven by circumstantial evidence); *Neshaminy Water Resources Authority v. Del-Aware Unlimited, Inc.*, 332 Pa. Super. 461, 470, 481 A.2d 879, 883–84 (1984) (protester, otherwise without notice, who was present as part of group singing in unison while terms of injunction were read aloud, at site where injunction was posted, found to have actual notice).

We also concur with the court that it could consider the actions of defendants in attempting to drown out the reading of the injunction. Such conduct is probative that they were already aware of the content of the order and were trying to pre-

vent the formality of notice. In any event, we do not accept that the concerted actions to defeat notice can be effective for that purpose. See *New York State National Organization for Women v. Terry*, 732 F. Supp. 388, 409 n.15 (S.D.N.Y. 1990).

■ We find that there was substantial, credible evidence to support the trial court's findings that each defendant knew of the terms of the order. At a minimum, the findings are supported by testimony that police officers informed each protester, prior to making an arrest, that the protester was violating a court order and could leave without being arrested and placed a copy of the order on or near each protester. It is true that the evidence was conflicting. But "[i]t is the province of the trial court to determine the credibility of witnesses and weigh the persuasive effect of the evidence." *Bruntaeger v. Zeller*, 147 Vt. 247, 252, 515 A.2d 123, 126 (1986).

■ For the same reason, we uphold the court's findings that each defendant violated the terms of the order. Certain of the defendants, for example, claim only to have stood beside the door to the health center, not directly in front of it. Evidence showed, however, that they were holding a banner over the approach to the door that would block passage to it. While it is true that persons attempting to enter could walk around those defendants or crawl under their banner, such participation in an overall effort to physically impair the ability of persons to enter the health center was violative of the order's prohibition on "blocking any . . . entrance." Moreover, all defendants stipulated that they were acting in concert with defendant McHugh and the others to prevent abortions from taking place at the center that day. Jurisdictions uniformly hold that those who, with knowledge of a court order, act in concert to aid and abet others in its violation are subject to being found in contempt of the court. See, e.g., *Roe v. Operation Rescue*, 919 F.2d at 871.

Next, defendants challenge the trial court's decision to hold them jointly and severally liable for plaintiffs' damages of $3,738, the cost of service of the TRO and the new injunction imposed by the court in the amount of $5,000, and the award of more than $14,000 in attorneys' fees. We reiterate that orders of contempt are discretionary and we will not reverse unless the court's discretion was withheld or exercised in an untenable fashion. *Persons v. Lehoe*, 150 Vt. at 585–86, 554 A.2d at 683.

■ Defendants claim that the court should not have held them jointly and severally liable for plaintiffs' damages, because they did not equally share fault and responsibility for those damages, emphasizing that the point at which each defendant began to be in contempt of court varied, depending upon when each gained actual knowledge of the court order. Generally, those who act in concert to violate a court order are jointly and severally liable for resulting damages. See *National Labor Relations Board v. Laborers' International Union of North America*, 882 F.2d 949, 955 (5th Cir. 1989). This rule is consistent with the general principle that tortfeasors are jointly and severally liable for compensatory damages. See *Zaleskie v. Joyce*, 133 Vt. 150, 158, 333 A.2d 110, 115 (1975). As defendants point out, we have adopted a different rule for punitive damages. See *Coty v. Ramsey Assocs.*, 149 Vt. 451, 466, 546 A.2d 196, 207 (1988). The damages at issue here, however, are entirely compensatory. We see no error in imposing joint and several liability.

■ Defendants' challenge to the award of attorneys' fees is also without merit. Attorneys' fees are ordinarily awarded in contempt actions as part of the compensation due complainants for defendants' actions, which have put the complainants in the position of having to seek the assistance of the courts to enforce a judgment. See 11 Wright & Miller, *supra*, § 2960, at 584–85; see also, e.g., *National Labor Relations Board*, 882 F.2d at 956 (awarding fees and costs "in the amount required" to bring contempt proceeding); *Plumbers & Pipefitters Local Union No. 190 v. Wolff*, 141 Mich. App. 815, 818, 369 N.W.2d 237, 239 (1985) (awarding fees incurred in contempt proceeding).

■ Vermont follows the "American Rule" with respect to attorneys' fees, *In re Gadhue*, 149 Vt. 322, 327, 544 A.2d 1151, 1154 (1987), and generally does not award fees absent statutory authority or a contractual obligation. *Gadhue* involved a case where a landowner who prevailed in a zoning appeal against a neighbor was forced to seek an injunction because the neighbor built a structure in violation of the zoning decision. We held that the case fell within an exception to the "American Rule" applicable where an individual is forced to enter a second round of litigation to secure a clearly defined right that should have been

granted without judicial intervention. See *id.* at 329, 544 A.2d at 1155. We found the circumstances to present an "exceptional case" in which fees may be awarded "'for dominating reasons of justice.'" *Id.* at 330, 544 A.2d at 1156 (quoting *Sprague v. Ticonic National Bank*, 307 U.S. 161, 167 (1939)).

The appropriateness of fees in a contempt case follows directly from *Gadhue*. We do not accept defendants'' argument that *Gadhue* does not apply as to defendants who were not named parties in the underlying order. They knew by its terms that the order applied to them and that they were violating it when they participated with Michael McHugh and Operation Rescue in the entry into the center. Nor do we accept the argument that the fees could not include amounts incurred in connection with plaintiffs' plan to develop an attempt for personal service of the TRO. The court found that defendants participated in an overall scheme to evade service and should be responsible for plaintiffs' expenses in trying to serve them. The award fell within the court's discretion.

Finally, defendants argue that the court erred in imposing prospective coercive fines of $10,000 per day for the first violation of the order and $20,000 per day for further violations. Although purely prospective fines are not favored in Vermont, *State v. Pownal Tanning Co.*, 142 Vt. 601, 606, 459 A.2d 989, 992 (1983), civil contempt fines may be imposed in an appropriate circumstance either to compensate complainants or as a coercive sanction. See *Johnson v. Bednar*, 573 So. 2d 822, 825 (Fla. 1991) (court may, in its discretion, impose fine unrelated to actual damages to coerce compliance with previously issued court order). When imposed as a coercive sanction, the fine must be purgeable—that is, capable of being avoided by defendants through adherence to the court's order. *Pownal Tanning Co.*, 142 Vt. at 604, 459 A.2d at 991. Further, the situation must be such that "it is easy to gauge the compliance or noncompliance with an order." *Id.* at 606, 459 A.2d at 992.

Both requirements imposed by *Pownal Tanning Co.* are met here. The fine will be due only upon a further violation of the injunction by one of the class of persons to which it is directed, with service or actual notice of its provisions. See *Roe v. Operation Rescue*, 919 F.2d at 869. Unlike in *Pownal*, where the order

at issue was complex and required affirmative steps by defendants, here the injunction prohibits clearly defined conduct, participation in which can be readily ascertained.

 Further, the circumstances present here are extreme and extraordinary. In concluding that prospective fines were needed, the court emphasized the "violent tendencies" of defendants and the magnitude of the harm. It found that defendants' acts were "willful, outrageous, and presented a clear and present danger to the public health and safety." It also found that defendants claimed to act under "higher law" and did not feel bound by the injunction. This latter finding supports the conclusion that some coercive sanction is necessary in this case to deter repetition. We conclude that the imposition of a prospective coercive fine is reasonable in this case. See *New York State National Organization for Women v. Terry*, 886 F.2d 1339, 1353–54 (2d Cir. 1989). Our disfavor of the use of prospective coercive fines must give way in this narrow and exceptional set of circumstances. No abuse of discretion is shown.

*Affirmed.*