## Jodi MAYO v. Michael MAYO

[786 A.2d 401]

No. 99-432

September 26, 2001. Defendant Michael Mayo appeals the Lamoille Family Court's finding of contempt of court and order for sanctions which resulted in the modification of his and plaintiff Jodi Mayo's stipulated final divorce order. Defendant claims (1) plaintiff's motion to amend the stipulated final divorce order was untimely as beyond the one year time limit for modification of court orders under V.R.C.P. 60(b) when the grounds for modification are based upon subsection (3) of that rule; (2) plaintiff failed to allege a real, substantial and unanticipated change in circumstances when she sought modification of the spousal maintenance agreement contained within the stipulated final divorce order; (3) the court lacked jurisdiction to modify the stipulated final divorce order in a contempt proceeding; (4) the court's contempt sanction modifying the property settlement portion of the stipulated final divorce order was reversible error;

and (5) the court's opinion on contempt is not supported by adequate findings of fact, and the findings relied upon are clearly erroneous. We agree that the court's finding of contempt was erroneous, and that the sanctions imposed resulted in an impermissible modification of the stipulated final divorce order, and accordingly reverse.

On July 31, 1998, plaintiff and defendant filed a stipulated final divorce order which the family court accepted and entered that same day. The order provides in part that the parties list the marital home for sale, and upon its sale distribute 55% of the sale proceeds to plaintiff and 45% to defendant. Defendant was awarded possession of the home until it sold. The order also provides that defendant pay plaintiff spousal maintenance for five years, commencing on August 1, 1998 in the amount of $1,000 per month for one year, then decreasing to $750 per month for the next two years, and to $500 per month for the final two years.

On January 22, 1999, the family court heard defendant's motion to modify the final divorce order, as well as plaintiff's objection to the motion and her request to enforce the final order. At the hearing, the judge recognized that both parties were at fault for the confusion and conflict that had arisen between them in this contentious divorce, and that they had been antagonizing each other to the detriment of their children. The judge noted that the defendant had been intentionally late in paying spousal maintenance to plaintiff, and that, to rectify the situation, "the first thing [defendant] ought to do is he ought to pay the alimony on time each and every month, together with the child support." At the end of this discussion, the judge addressed defendant's counsel and stated "I don't think you need an order."

On February 17, plaintiff signed and then filed a motion to hold defendant in contempt, claiming that defendant was in violation of the court's January 22 "order" * that he pay the monthly maintenance and child support on time. Plaintiff alleged that at that time defendant was in arrears $850 in maintenance and $31.64 in child support payments. In her motion plaintiff sought punitive damages of $5,000 payable at the time of the sale of the home, if not sooner, attorney's fees, and interest on the late maintenance and support payment amounts.

A hearing was held on this motion on April 2, and on June 22 the court filed its order finding defendant in contempt. At

---

* The rule for the creation of a valid court order is contained in V.R.C.P. 58, which requires that for an entry of judgment to be valid, the presiding judge must approve and sign it, and it must then be entered by the clerk. Furthermore, any judgment will be effective only when it is entered properly. See V.R.C.P. 58; see also V.R.C.P. 79(a) (delineating procedure for clerk entry of court orders); *Baker v. Town of Goshen*, 169 Vt. 145, 149-50, 730 A.2d 592, 595-96 (1999) (recognizing requirement of a signed judgment). The "order" plaintiff claims defendant violated (the oral statement by the judge in the January 22 hearing) was never reduced to writing, approved, signed, or entered by the court — nor, judging by the judge's own statements, did he ever intend there to be an order resulting from that hearing. Therefore, the statements made did not constitute a valid court order, and defendant's failure to abide by those statements did not place him at risk of being found in contempt of court. The original final divorce order, however, was properly entered by the court, and could, therefore, properly serve as a basis for a charge of contempt. It set forth the monthly payment schedule for alimony, which all agree defendant had failed to meet in a timely manner.

the hearing, the court stated to the parties that "the contempt process is not one for reworking the original [divorce] order." In its order on the contempt charge, the court stated that defendant had not kept up on his monthly payments since the final divorce order had been issued and that defendant had testified to this failure, so there was no question whether he had violated the court's order. The court identified the issue before it as whether defendant had shown that he does not have the ability to make the required payments. It found that he did not have sufficient income to make the required support payments when the stipulation was presented to the court, and noted that defendant had testified at the April 2 hearing that, after the stipulated final divorce order was entered, his income did not change from its previous level. Therefore, the court concluded, defendant did not act in good faith when he signed the stipulation, and that in failing to make his required payments to plaintiff he acted in willful violation of the stipulated final divorce order. A hearing was scheduled for August 6 to determine "the appropriate means of ensuring compliance with the court's order."

On August 5, defendant filed a "memorandum regarding sanctions hearing" wherein he notified the court that he was then current on his child support and maintenance obligations, and suggested the creation of an escrow account to guard against future arrearages. On August 11, plaintiff submitted a "memorandum regarding sanctions" which requested different sanctions than the punitive damages and interest originally sought in her motion. Rather, while she still sought attorney's fees, she asked the court to revise the property and maintenance settlements, absolving defendant from all future maintenance payments and awarding her possession and full ownership of the marital home. On September 3, the court issued its order

sanctioning defendant for his contempt. The court granted plaintiff's request and ordered defendant to vacate the home and convey his interest to plaintiff. Defendant was to be released from owing plaintiff any future maintenance payments from August 1, 1999 forward. Plaintiff was also awarded $2,500 in attorney's fees. This order was followed by an amended final order wherein the court used its "equitable powers" to set aside the parties' stipulated final order of divorce. This appeal followed.

Defendant begins his challenge to the proceedings below by assailing the timeliness of the motion to modify the property settlement, claiming that plaintiff's motion to amend the final order was untimely because it was made more than one year after the entry of the final divorce order. See V.R.C.P. 60(b)(3) (motion for relief from judgment or order, if based on fraud, must be made not more than one year after the judgment or order was entered). In plaintiff's August 11 "memorandum regarding sanctions," she argued that Rule 60(b)(3) could provide a means by which the property settlement could be revised, based upon "fraud, misrepresentation or misconduct." Plaintiff offered that "[c]onsidering all of these factors, plaintiff requests that the court revise the property settlement in such a way that defendant may be absolved from all future maintenance payments to plaintiff, and plaintiff may move back into the homestead residence with the children, and be awarded full possession and ownership of the residence." This constituted the first time plaintiff sought to modify the final order or raised any claim of fraud.

The procedure for modifying a property settlement arising from a divorce proceeding is well settled. "[T]he [family] court cannot modify the property disposition aspects of a divorce decree absent circumstances, such as fraud or coercion, that would warrant relief from

a judgment generally." *Boisselle v. Boisselle*, 162 Vt. 240, 242, 648 A.2d 388, 389 (1994) (citing *Viskup v. Viskup*, 149 Vt. 89, 90, 539 A.2d 554, 555-56 (1987)). The rules providing for relief from divorce decrees are contained in V.R.C.P. 60, which provides generally for relief from civil judgments. When the relief sought is based upon allegations of fraud, misrepresentation, or other misconduct of an adverse party, as was alleged by plaintiff here, the relief must be sought within one year of the entry of the judgment or order at issue. V.R.C.P. 60(b)(3). The relief sought by plaintiff here was presented to the court more than one year after the entry of the order she sought to revise, the stipulated final divorce order. As such, her motion to revise the stipulated final divorce order was untimely, depriving the court of the ability to grant her motion.

Defendant next argues the court erred in modifying the maintenance award. Modification of a spousal maintenance award requires "a showing of a real, substantial, and unanticipated change of circumstances." 15 V.S.A. § 758; see also *Gil v. Gil*, 151 Vt. 598, 599, 563 A.2d 624, 625 (1989) (noting that such showing is a "jurisdictional prerequisite"). The burden of establishing that such a change has taken place is on the party seeking modification. *Gil*, 151 Vt. at 599, 563 A.2d at 625. A party's being found in contempt of an existing maintenance order does not necessarily give rise to the conclusion that there has also been a real, substantial, and unanticipated change in circumstances. The court made no finding that such a change in circumstances had taken place. Nor has plaintiff, who bears the burden of proof on this issue, offered that such a change has occurred. Therefore, it was incorrect for the court to modify the maintenance agreement.

Defendant next challenges the finding of contempt, claiming that the findings of fact in support of the contempt finding are clearly erroneous. When reviewing a trial court's finding of contempt, "we will not disturb the judgment unless the court's discretion was entirely withheld or was exercised on grounds. clearly untenable." *Vermont Women's Health Ctr. v. Operation Rescue*, 159 Vt. 141, 147, 617 A.2d 411, 414 (1992) (citation and internal quotations omitted); see also V.R.C.P. 52(a)(2) (when reviewing a trial court's findings of fact, we will not set them aside unless they are clearly erroneous). We review a trial court's findings of fact in a light most favorable to the prevailing party, disregarding modifying evidence, with the burden on the appellant to show that there is no credible evidence to support the findings. *Mullin v. Phelps*, 162 Vt. 250, 260, 647 A.2d 714, 720 (1994). "[W]e will uphold trial court findings as long as there is substantial evidence to support them although they are contradicted by credible evidence," and we rely upon the factfinder's weighing of the evidence. *Vermont Women's Health Ctr.*, 159 Vt. at 147, 617 A.2d at 414.

In civil contempt proceedings where questions regarding defendant's financial ability to comply with a court order are raised, "the court must find from the evidence that the defendant not only refused to pay but also that he was under a present duty to pay *and* had the ability to make the ordered payments." *Steele v. Steele*, 142 Vt. 112, 114, 453 A.2d 400, 401 (1982) (internal citations and punctuation omitted). "[C]ontempt by its very nature is inapplicable to one who is powerless to comply with the court order. It would be utilized against only that person who, being able to comply, contumaciously disobeys, or refuses to abide by, the court order." *Spabile v. Hunt*, 134 Vt. 332, 335, 360 A.2d 51, 52 (1976) (citation omitted). "In cases of noncompliance due to a claimed financial inability, the court must find a present ability to pay before the defendant may be found in contempt." *Hunt v. Hunt*, 162 Vt. 423, 436, 648 A.2d

843, 853 (1994). We are mindful that the burden is on the defendant to establish that he has the inability to pay, rather than on the plaintiff to show that defendant has a present ability to pay. *Russell v. Armitage*, 166 Vt. 392, 401, 697 A.2d 630, 636 (1997) (citing *Spabile*, 134 Vt. at 335, 360 A.2d at 52).

The court found that at no time after the final divorce order was entered did the defendant have the financial ability to meet his support obligations to plaintiff. Defendant informed the court that his post-stipulation inability to pay was the result of several unanticipated events, including the lack of expected growth in his propane business attributed to a mild winter, his inability to borrow against his equity in the marital home caused by plaintiff's refusal to permit such borrowing, the failure of the home to sell soon after going on the market, and his incurring greater-than-anticipated child care expense after one of their sons began living with him on a full-time basis, rather than part-time as provided in the stipulated final divorce order. Defendant admitted that he had made an error in judgment when calculating his financial abilities for purposes of the divorce settlement, attributing this error to the stress he was undergoing as a result of this highly emotional divorce. While we recognize that defendant had a role in the crafting of the stipulated divorce order which contained the support schedule he was unable to adhere to, his inability to pay has not been shown to be an attempt to disobey or otherwise avoid the order. Mistaken judgment, without any suggestion of deceit, cannot be the basis for a finding of contempt. As the court found a present, as well as past, inability to pay, it recognized that the defendant was powerless to adhere to the terms of the order of which he was found to be in contempt. Therefore, the finding of contempt was clearly erroneous. See *Spabile*, 134 Vt. at 334-35, 360 A.2d at 52.

Notwithstanding our holding that the court erred in its finding defendant in contempt, we also address defendant's claim that the court erred in ordering the sanction of conveying defendant's interest in the marital property to plaintiff and otherwise modifying the stipulated final divorce order. We have on numerous occasions recognized the coercive nature of the civil contempt mechanism, which, in contrast to criminal contempt, focuses not on punishment but on compelling compliance with a preexisting court order. *Sheehan v. Ryea*, 171 Vt. 511, 512, 757 A.2d 467, 468 (2000) (mem.); see also *Russell*, 166 Vt. at 399, 697 A.2d at 636; *Spabile*, 134 Vt. at 334-35, 360 A.2d at 52. "[C]ivil contempt penalties are assessed to coerce the defendant to do some act ordered by the court for the benefit or advantage of the opposite party." *Town of Hinesburg v. Dunkling*, 167 Vt. 514, 526, 711 A.2d 1163, 1170 (1998) (internal quotations omitted). The scope of civil contempt sanctions is limited to "compensatory fines or coercive sanctions" such as imprisonment for an indeterminate period. *Sheehan*, 171 Vt. at 512, 757 A.2d at 468 (citation omitted). Such fines or sanctions must similarly be "purgeable, i.e., they must be capable of being avoided by defendants through adherence to the court's order." *Id.* (citation omitted).

The family court's use of the contempt process in this case defeated these purposes. First, in altering the preexisting final divorce order, the court made it impossible for defendant to comply with the order of which he was found to be in contempt. Defendant was not coerced into complying with the original order — he was compelled to act, to his detriment and in plaintiff's favor, in a manner contrary to, rather than in accordance with, the original order. The modification of the terms of the original order also made its enforcement impossible. Further, the sanctions imposed were not purgeable, as

there was no means by which the defendant could comply with the underlying order upon which the contempt finding was based. None of the purposes to be served by contempt sanctions were served here. For the aforementioned reasons, modification of the property distribution award is not a proper sanction in this civil contempt proceeding.

*The finding of contempt and order for sanctions are reversed.*

**Morse, J.,** dissenting. I dissent. The court's opinion signals procedural trouble for divorced parties who are not receiving their due under a judgment. The majority opinion severely limits the options for addressing a request to be assured maintenance — a request, by the way, the Court finds not unreasonable, yet makes all but impossible to attain, given the amount in controversy.

The facts acknowledged by the Court, but not given the weight the standard of review demands, are that defendant-husband paid plaintiff-wife maintenance "intentionally late" and stipulated to maintenance payments he could not make as the result of bad faith. In determining that husband entered into the agreement in bad faith, the court determined his excuses for agreeing to maintenance payments he was financially incapable of meeting unsatisfactory. The court consequently ordered the property division modified and eliminated maintenance to remedy the husband's bad faith and keep the parties from future litigation over his recalcitrance in paying maintenance.

I do not agree that the court's findings are clearly erroneous. Husband had promised to pay maintenance in return for a share in the equity in the marital house, knowing he would be able to pay only a portion of it. He admitted as much. The court's finding that he acted in bad faith is supported by the evidence. Contempt is the proper remedy.

Further, I do not agree with the Court's approach, which makes modification of the property distribution off-limits as a remedy under the contempt power. While I acknowledge that this Court has previously held that modification of a property settlement is not available as a sanction for contempt, *Viskup v. Viskup,* 149 Vt. 89, 91, 539 A.2d 554, 556 (1987), I believe that case was wrongly decided. While a property decree should generally be considered final, in cases of ongoing noncompliance with a divorce order, it makes far more sense to modify the parties' legal relationship to ensure that the party wronged is made whole than to imprison the debtor until maintenance is paid and repeat the process over again and again when husband's recalcitrance returns.

Under the family court's broad equitable powers to remedy husband's bad faith in deceiving his wife (and the court) when entering into the divorce settlement, it may order relief short of imprisonment or other coercive measures. See *In re C.W.,* 169 Vt. 512, 517, 739 A.2d 1236, 1240 (1999) ("The power, in particular, to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority.") (internal citation and punctuation omitted). That should include the power to redistribute the property within the parties' control to remedy the contempt, not only for the short term, but also to prevent its recurrence in the long term.

I would affirm.