*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2011-053

NOVEMBER TERM, 2011

| | | |
|---|---|---|
| Town of Windham | } | APPEALED FROM: |
| | } | |
|   v. | } | Superior Court, Windham Unit, |
| | } | Civil Division |
| | } | |
| Sean Reese and Elizabeth Reese | } | DOCKET NO. 456-10-053 Wmcv |

Trial Judge: John P. Wesley

                David A. Howard

In the above-entitled cause, the Clerk will enter:

Defendants Sean and Elizabeth Reese appeal the superior court's denial of their requests for relief from prior orders finding them in civil contempt and imposing daily fines until they addressed the overflow from a pond on their property to a neighboring property and town highway. We affirm, except that we reduce the amount of the ultimate fine by $150.

In the fall of 2003, the Town of Windham filed suit against defendants to collect damages and obtain an injunction to halt an ongoing overflow from defendants' pond that had flooded a town highway. The pond was created by water build-up in a talc mine previously operated on defendants' property. In March 2004, the Byron W. McCandless Trust, which owns property downhill from the pond, moved to intervene on the side of the Town. On April 4, 2007, following a four-day trial in October 2006, the superior court issued a decision concluding that defendants' failure to control the flow of water from the pond "caused significant present and continuing injury to each of the Plaintiffs." The court denied compensatory damages for lack of proof but granted injunctive relief subject to a further evidentiary hearing and supplemental findings concerning the appropriate scope of the relief.

On August 14, 2007, after conclusion of the follow-up hearing during which both sides presented the testimony of expert witnesses, the superior court issued a final injunction ordering that defendants "shall take immediate steps to lower the surface of the . . . pond by at least fifteen feet from the elevation at which water commences to spill over the edge, which shall be accomplished no later than October 1, 2007 except for good cause shown," and further "shall with all deliberate speed take steps necessary to design, obtain necessary permits and construct a permanent regulated outflow system that insures that the level of the water in the pond does not rise higher than two feet below the level at which it commences to spill" unless they obtain a regulatory permit that approves a higher elevation. With regard to the latter permanent solution, the court ordered defendants to furnish the Town and the Trust, no later than December 15, 2007, completed engineering and construction plans at least twenty days before submitting an application for regulatory approvals. The court expressly recognized that "even assuming all

deliberate speed" in implementing a permanent solution to the overflow, the permitting process and construction most likely could not be completed before the coming winter. Nevertheless, because of its conclusion that the "present unregulated flows" from the pond posed "a significant danger" of creating permanent wetlands and erosion on the Trust's property, as well as winter ice sheeting on the town highway, defendants were required "to take such steps as necessary to immediately reduce the level of the pond by at least 15 feet."

On October 1, 2007, the same day by which defendants had been ordered to complete "immediate steps" to abate the pond's overflow, defendants filed a motion seeking relief from the court's judgment imposing a final injunction. Three days later, the Trust filed a motion to hold defendants in civil contempt for failure to take immediate steps to lower the pond's water level, as ordered by the court. The court held a hearing on the two motions on October 29, 2007. Defendants did not appear at the hearing or present any evidence, but their attorney made statements regarding his attempts to satisfy the court's injunction. The attorney acknowledged that the pond overflow had not been drawn down, but he explained that he had participated in a September 17 site visit with an employee of the Agency of Natural Resources (ANR), who informed him that there was "no way" defendants would be allowed to pump into the stream by the October 1 deadline the amount of water necessary to satisfy the court's injunction. The attorney explained that he never received a written statement from the ANR employee to this effect, as promised, and that he was shuffled to three different departments before he was finally told that he needed to provide a proposed drawdown rate from a hydrologist, which he had done that morning.

On November 1, 2007, the court granted the Trust's motion for contempt based on defendants' failure to do any actual construction or work "to attempt even minimal temporary alleviation of the overflow problem." The court accepted the attorney's statements regarding his belated attempts to determine whether defendants would need regulatory approval to pipe water across the Trust property into a nearby stream, but concluded that there was "no reliable evidence that the [settling] ponds on defendants' property could not have been used to give some temporary relief with or without a permit of any sort or at least investigated as a possible temporary solution." The court found that defendants' lack of effort was willful and that they had failed to demonstrate that they could not have complied with the court's injunction and alleviated the overflow situation, noting that its previous order had not limited defendants' options to pumping water over the Trust property and into the nearby stream but rather had "left open that there could be other solutions." Based on these findings and conclusions, the court ordered defendants to pay $50 per day beginning October 31, 2007 "until such time as the level of the water is drawn down at least two feet below the level at which water commences to spill over the edge or by plaintiff and intervenor stipulation as to a higher level or until further relief is granted by the court for good cause," and then $20 per day "until the level is drawn down to the fifteen foot level of the court's order or by plaintiff and intervenor stipulation as to a higher level or until further relief is granted by the court for good cause."

Over the ensuing months, defendants filed several motions seeking relief from the court's order that they pay daily fines for any continuing noncompliance with its final injunction. In December 2008, the parties entered into a stipulation that resolved some of the compliance issues. They agreed that the level of the water reached two feet below the spill elevation by March 1, 2008. They also agreed that maintaining the water three feet, rather than fifteen feet,

2

below the spillage level would satisfy the court's injunction, thereby effectively ending the daily fines as of October 15, 2008, when the water was reduced to that level. In a November 2010 order, the superior court rejected defendants' arguments in support of their motion for relief from paying the daily fines it had incurred under the court's previous order, concluding that defendants had been "dilatory in getting regulators involved, an aspect of compliance that was entirely foreseeable." Nevertheless, the court gave the parties time to submit further memoranda concerning any further stipulation they might have and the Trust's request that the fines be paid directly to it rather than the state's general fund. In a January 2011 order, the court denied defendants' motion for relief from paying the fines, which the court calculated at $10,610. The court also denied the Trust's motions for attorney's fees and for allocation of payment of the fines directly to it.

Defendants appeal, arguing that the superior court erred in denying their motions for relief from the court's final injunction and its order granting the Town's motion for contempt and requiring the payment of daily fines. According to defendants, the court erred by not granting them relief from its final injunction and by finding them in contempt because they showed good cause for not having obeyed the court's injunction and there was no evidence that they willfully disobeyed an order with which they were able to comply. Along the same lines, defendants contend that the court erred by denying their motion for relief from paying the fines because the evidence demonstrated that they did not have the ability to purge themselves of civil contempt and thus avoid the fines imposed for the contempt. For the most part, we find these arguments unavailing.

We will not disturb the trial court's decision on a motion for relief from judgment "[a]bsent a clear and affirmative abuse of discretion." Sandgate Sch. Dist. v. Cate, 2005 VT 88, ¶ 6, 178 Vt. 625 (mem.). "The moving party carries the burden of proving such an abuse occurred." Id. Regarding the court's contempt order, the moving party has the "burden to prove the elements of civil contempt by clear and convincing evidence." Vt. Women's Health Ctr. v. Operation Rescue, 159 Vt. 141, 146 (1992). Nevertheless, "[o]nce the trial court has made its findings of fact, and in its discretion entered a judgment of contempt, we will not disturb the judgment unless the court's discretion was entirely withheld or was exercised on grounds clearly untenable." Id. at 146-47 (quotation omitted). Moreover, "[e]ven where the standard of proof is clear and convincing evidence, we will uphold trial court findings as long as there is substantial evidence to support them although they are contradicted by credible evidence." Id. at 147. Given this standard of review and examining the record before us, we find no basis to disturb the superior court's orders in this case—with one minor exception.

Defendants insist that they did not violate the final injunction because, despite their good faith attempts to satisfy it, they were unable to do so. We disagree. The court's final injunction, issued on August 14, 2007, ordered defendants to take "immediate steps" to reduce the overflow of their pond to prevent significant potential harm to a neighboring property and a town highway. This aspect of the court's order—for immediate action on defendants' part—was in addition to and independent from the permanent steps also ordered by the court. Notwithstanding the order for immediate action, it is undisputed that defendants did not engage in any construction or work before the October 1 deadline date to reduce the flow of the pond. Rather, on the deadline date, defendants asked for relief from the final injunction. They did not appear at the hearing on their motion or present evidence; instead, their attorney noted a September 17 site visit he and an

3

ANR employee had attended and some subsequent telephone calls regarding what needed to be done, if anything, to obtain regulatory approval to pipe pond overflow into a nearby stream. According to the attorney, he learned that he would need to submit a proposed drawdown from a hydrologist, which he had done that very morning.

The statements of defendants' attorney regarding his attempts at seeking regulatory approval for one method of drawing down the pond overflow do not compel us to overturn the superior court's determinations that defendants had acted in a dilatory manner and thus could not show that they were unable to comply with the injunction. See Socony Mobil Oil Co. v. Northern Oil Co., 126 Vt. 160, 164 (1966) ("The inability, without fault, to render obedience to an order or decree of a court is a good defense to a charge of contempt, but such a defense is effective only where, after using due diligence, the person is still not able to comply with the order."). If anything, the attorney's remarks confirmed that defendants had done little to satisfy the court's order to take immediate action to reduce the pond's overflow.

Defendants argued below, and renew the contention here, that, in issuing the final injunction, the court anticipated that the only method for reducing the pond overflow would be to pipe water over the Trust's property into the nearby stream. The court issuing the contempt order explicitly rejected that argument, and we agree with that assessment. The final injunction plainly did not limit the methods for defendants to satisfy the requirement that they take immediate steps to reduce the pond's overflow. Rather, the court ordered defendants "to take such steps as necessary to immediately reduce" the pond overflow. At the contempt hearing, the Trust's expert testified about other ways to direct the overflow, including pumping the water into settling ponds on defendants' property, as had been done before when the mine was in operation, and or into the ditch along the town highway. Defendants made no attempt to show that they had done anything other than make inquiries in mid-September about whether state approval would be needed to pipe enough water in the stream to meet the full drawdown required by the court's injunction. As the court found, there was no evidence that plaintiff attempted to alleviate the situation by making some drawdown or by looking into alternative methods for a drawdown. In short, there was ample evidence for the court to find a lack of due diligence on defendants' part, thereby foreclosing defendants' attempt to claim an inability to satisfy the court's injunction. Accordingly, we find no basis to relieve defendants of the contempt order.

For similar reasons, we reject, for the most part, defendants' argument that the superior court's imposition of daily fines cannot stand because the order did not permit them to purge themselves of the contempt by satisfying the order and thus avoiding the fines. See Sheehan v. Ryea, 171 Vt. 511, 512 (2000) (mem.) (stating that coercive sanctions for civil contempt must be purgeable). As noted, the record demonstrates that defendants did not engage in due diligence in seeking to comply with the immediate temporary drawdown aspect of the court's injunction; therefore, they cannot avail themselves of the defense that they were unable to comply with the injunction. As for the court's contempt order, it imposed fines of $50 per day until defendants drew down the water two feet below the spill level and $20 per day until they drew down the water to the fifteen-foot level—or until the parties stipulated otherwise or the court granted different relief for good cause shown. Nothing in the record demonstrates that defendants acted with due diligence but were unable to comply with the order so as to avoid the fines. Nor, for the most part, does the record suggest what would have been possible if defendants had acted with due diligence. Thus, we decline to grant defendants relief from the court's contempt order—with

4

one minor exception.  The court's November 1, 2007 order imposed fines beginning on October 31, 2007, two days following the hearing on the motion, but one day prior to the order itself.  Obviously, defendants could not purge themselves of the contempt before the contempt was imposed.  Accordingly, we will amend the court's order to impose the sanctions beginning two days after the November 1 contempt order rather than two days after the contempt hearing, thereby reducing the total fine by $150.

The superior court's judgment is affirmed in all respects, except that its January 12, 2011 order is amended to change the amount of the total fine from $10,610 to $10,460.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Brian L. Burgess, Associate Justice