VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.        25-AP-233

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

FEBRUARY TERM,    2026

Chittenden Resorts, LLC dba Mountain Top Inn and Resorts et al. v. John Gerlach\* and Debra Gerlach\*

}
}
}
}
}
}
}

APPEALED FROM:

Superior Court, Rutland Unit, Civil Division
CASE NO. 24-CV-02711
Trial Judge: Alexander N. Burke

In the above-entitled cause, the Clerk will enter:

Defendant John Gerlach challenges the trial court's determination that he violated the terms of a preliminary injunction and its award of attorney's fees to plaintiffs. We affirm.

I. Preliminary Injunction

We begin with the preliminary injunction. In July 2024, plaintiffs Chittenden Resorts, LLC, d/b/a Mountain Top Inn and Resorts and Mountain Top Cross Country Ski Resort, and RMT Associates, LLC (collectively Mountain Top) filed a declaratory judgment action against defendants John and Debra Gerlach. Mountain Top holds deeded easement rights in trails that cross the Gerlachs' property, and it sought a declaration regarding the parties' rights and obligations with respect to these easements. Mountain Top alleged that the Gerlachs had interfered with its rights, including by, among other things, "remov[ing] safety-related signage and other items" and unilaterally discontinuing several existing trail segments and relocating them to an unsuitable location. Mountain Top further alleged that the Gerlachs sought to: restrict who could use the trail easements; constrain Mountain Top's maintenance of the trail easements; and prohibit signage and various other safety practices employed by Mountain Top for the safety of trail users. Mountain Top included as exhibits letters between the parties in which the Gerlachs asserted, among other things, that Mountain Top was limited in its ability to maintain the trails and that it could not erect "barriers," including a rope, on trails. Mountain Top responded that the Gerlachs' statement about barrier installation was false and explained that, as it had notified the Gerlachs previously, it would continue to mark closed trails with ropes, as it had for decades, consistent with well-established trail safety protocols.

Mountain Top asked the court to enjoin the Gerlachs from engaging in certain conduct during the pendency of its suit. In October 2024, after a hearing, the court issued a preliminary injunction. It made the following findings, which were later incorporated into the decision at issue in this appeal. Mountain Top has sixty kilometers of trails. The trails traverse Mountain Top's property, property owned by other private individuals, and land in the Green Mountain National Forest. Mountain Top's guests and invitees use the trails for hiking, horseback riding, and cross-country skiing. Mountain Top maintains the trail system, including grooming the trails in winter, clearing fallen trees, removing rocks, and ensuring proper signage is posted along the trails.

The Gerlachs bought property adjacent to Mountain Top in January 2018; the property is subject to trail easements held by Mountain Top. The relevant deed language allows Mountain Top to use the trails in common with the Gerlachs, and to reasonably maintain them, including grooming them in the winter. The deed allows the Gerlachs to relocate the trails "so long as substantially similar access continues to be provided to [Mountain Top]."

In June 2024, the Gerlachs notified Mountain Top that they were relocating several trails. They then blocked the locations where the trails had been and posted no-trespassing signs. Mountain Top presented evidence that the new trails proffered by the Gerlachs would be difficult or impossible to use for cross-country skiing, particularly for beginners. The court found that Mountain Top would suffer a significant adverse effect if it lost access to the trails in question. The replacement of Mountain Top's primary beginner trail with a highly advanced trail also raised safety concerns for Mountain Top's guests, most of whom were new to cross-country skiing and horseback riding. One of the trails, moreover, was the first trail to be opened each season.

Based on these and other findings, the court issued a preliminary injunction that prohibited the Gerlachs from, among other things, "taking steps interfering with [Mountain Top's] continuing efforts to reasonably maintain the trails located on [the Gerlachs'] land" and "taking any steps to interfere with [p]laintiffs' efforts to post signage and other appropriate steps designed to reasonably protect the safety of trail users." With respect to the latter condition, the court determined that a plain reading of the deed in question clearly granted Mountain Top the right to use the existing trails for the activities outlined in the "Ski Trail Easement," including cross-country skiing. Inherent in the use and maintenance of the trail was ensuring that the trails were clearly marked for the benefit of both the users and the Gerlachs. Clearing potentially dangerous debris and ensuring proper signage were basic requirements of ensuring the safety of all users. The court held that Mountain Top's rights under the easement included taking these steps on the existing trails until suitable replacements could be found. The Gerlachs did not appeal the preliminary injunction.

## II. Motion to Enforce

In February 2025, Mountain Top moved to enforce the injunction and sought sanctions against the Gerlachs. Following a hearing, the court found that Mr. Gerlach violated the injunction and ordered him to pay Mountain Top's attorney's fees as a sanction.

The court incorporated the findings from its preliminary-injunction decision and made the following additional findings. During the winter leading up to Mountain Top's motion, Mountain Top maintained and operated a set of cross-country ski trails, including trails on the Gerlachs' property. Mountain Top does not open a trail to cross-country skiing for the season unless the trail is free of hazards and can be properly groomed. Mountain Top maintains a large-scale map of its trails at an activity center and indicates which trails are open and closed. Mountain Top also posts the condition of the trails and their status online. When a trail is closed, Mountain Top places a rope across the trailhead with an orange sign indicating it is closed. This is a common method in the cross-country ski industry to indicate a trail is closed, which Mountain Top used for the prior twenty years.

Mountain Top opened its cross-country ski season on December 24, 2024. It did not open one of the trails and placed a rope across the trailhead indicating the trail was closed. Mr. Gerlach admitted to taking down the rope while visiting his Vermont property during Christmas 2024. Mr. Gerlach's son also repeatedly removed a rope placed by Mountain Top indicating a closed trail. Mr. Gerlach knew that Mountain Top used ropes to mark trails as closed because he almost ran into such a rope a few years earlier. Mr. Gerlach had asked Mountain Top to use signs rather than a rope to indicate a closed trail; Mountain Top declined to do so. The court found that when Mountain Top used a rope at the trailhead to indicate a closed trail, there was the ability to navigate past the rope on a snowmobile.

The court explained that it was authorized to hold a party in contempt and impose appropriate sanctions "to secure both the proper transaction and dispatch of business [and] the respect and obedience due to the court and necessary for the administration of justice." State v. Allen, 145 Vt. 593, 600 (1985) (quotation omitted); see also 12 V.S.A. § 122 (empowering trial court to hold parties who violate court order in contempt). "Civil contempt sanctions may be used as a coercive measure to compel future compliance with a court order, or to compensate the victim." Kneebinding, Inc. v. Howell, 2018 VT 101, ¶ 73, 208 Vt. 578 (citation omitted). A plaintiff bears the burden of proving contempt by clear and convincing evidence. Id. ¶ 68.

Mountain Top argued in relevant part that the Gerlachs violated the injunction by removing the closed trail rope. The court recognized that "as [a] general rule before a person may be held in contempt for violating a court order, the order should inform him in definite terms as to the duties imposed upon him" and "[t]he order must be specific and definite so that it leaves no reasonable basis for doubt as to its meaning." State v. Pownal Tanning Co., 142 Vt. 601, 605 (1983). The court agreed with Mountain Top that Mr. Gerlach violated condition four of the preliminary injunction.

Condition four prohibits the Gerlachs "from taking any steps to interfere with [Mountain Top's] efforts to post signage and other appropriate steps designed to reasonably protect the safety of trail users." The court found that Mountain Top posted signage via the use of a rope across a trailhead, and Mr. Gerlach admitted to removing it. The court found Mr. Gerlach was aware of the rope's purpose, noting that he had asked Mountain Top to use alternative signage. Mountain Top had declined to do so, and Mr. Gerlach did not identify any authority he had to impose his preference for signage over Mountain Top's. The court concluded that Mountain Top proved by clear and convincing evidence that Mr. Gerlach violated the injunction and found him in contempt. It ordered the Gerlachs not to remove any rope used by Mountain Top to close off

any trail and to reasonably ensure that the Gerlachs' guests and invitees did not violate the terms of the preliminary injunction.

Mountain Top sought attorney's fees as a sanction, and the court granted its request with respect to fees incurred in pursuing its motion to enforce. See Vt. Women's Health Ctr. v. Operation Rescue, 159 Vt. 141, 150 (1992) (recognizing that "[a]ttorney['s] fees are ordinarily awarded in contempt actions as part of the compensation due complainants for defendants' actions, which have put the complainants in the position of having to seek the assistance of the courts to enforce a judgment"). The Gerlachs did not object to the amount of fees requested. This appeal followed.

### III. Arguments on Appeal

Mr. Gerlach argues that the preliminary injunction did not provide him adequate notice that he could not remove rope designating a closed trail, and that he reasonably believed he could remove the rope. In a related vein, he asserts that there is no evidence he acted willfully or with specific intent to violate the order. Mr. Gerlach further contends that the court erred in finding Mountain Top's rope to be a sign, and he reiterates his preference for a posted sign, rather than a rope, to designate a closed trail. Mr. Gerlach also asserts that the rope should not be considered an appropriate step to protect the safety of trail users. He offers his opinion about what steps should be considered reasonable to protect trail users, suggesting that Mountain Top is limited to grooming and removing debris from the trail. He maintains that his safety and the safety of others is imperiled by the way in which Mountain Top demonstrates a trail is closed, and that the court should have credited his expert's testimony on this point. Finally, Mr. Gerlach argues that the underlying injunction was inconsistent with the Gerlachs' property rights and Mountain Top's easement rights.[*]

Our review of the court's decision is deferential:

> Once the trial court has made its findings of fact, and in its discretion entered a judgment of contempt, we will not disturb the judgment unless the court's discretion was entirely withheld or was exercised on grounds clearly untenable. Even where the standard of proof is clear and convincing evidence, we will uphold trial court findings as long as there is substantial evidence to support them although they are contradicted by credible evidence. We rely on the factfinder's assessment of the credibility of the witnesses and its weighing of the evidence.

---

[*] In their reply brief, the Gerlachs also challenge the reasonableness of the attorney's-fee award. We do not address this argument as it was not raised below and is presented for the first time in the Gerlachs' reply brief. See Bull v. Pinkham Eng'g Assocs., 170 Vt. 450, 459 (2000) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal."); Gallipo v. City of Rutland, 2005 VT 83, ¶ 52, 178 Vt. 244 (stating that issues not raised in original brief may not be raised for first time in reply brief).

Id. at 146-47 (quotation and citations omitted). The court acted within its discretion here and its decision is supported by its findings and the record.

We have recognized that contempt may be found "against only that person who, being able to comply, contumaciously disobeys, or refuses to abide by, the court order." Spabile v. Hunt, 134 Vt. 332, 335 (1976). It is not applicable "to one who is powerless to comply with the court order." Id. As one treatise explains:

> [T]he court must find that the order violated is clear and unambiguous and that, although the party to be charged had notice of the order, it has not diligently attempted in a reasonable manner to comply. Once a prima facie showing of violation has been made, the charged party has the burden of proving the inability to comply. When the court's order is unclear, or the alleged contemnor has made an effort to comply, the court will not find contempt. But a violation of the decree need not be willful for a party to be held in civil contempt.

11A C. Wright & A. Miller, 11A Federal Practice and Procedure § 2960 (3d ed. 2025) (footnotes omitted). The U.S. Supreme Court has similarly held that "[t]he absence of wilfulness does not relieve from civil contempt;" given the remedial purpose of civil contempt, "it matters not with what intent the defendant did the prohibited act." McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949). Stated otherwise:

> [T]he long-standing rule is that good faith or lack of wilfulness is not a defense that the petitioner must negate. The rule is a salutary one, for the purpose of a motion for civil contempt is not to punish intentional misconduct, but rather to enforce compliance with an order of the court and to remedy any harm inflicted on one party by the other party's failure to comply.

S.E.C. v. Musella, 818 F. Supp. 600, 606 (S.D.N.Y. 1993) (quotation and alteration omitted).

Consistent with established precedent, and assuming the argument was preserved, the court did not need to find that Mr. Gerlach acted willfully or that he acted with specific intent to violate the order. To the extent the Court used the word "willful" in Obolensky v. Trombley, 2015 VT 34, ¶ 42, 198 Vt. 401, to summarize the holding of Spabile, that word choice was inartful and plainly not intended to overturn the established civil-contempt standard, mindful of its remedial purpose. We did not impose an intent requirement in Vermont Women's Health Center, cited by Mr. Gerlach, which involved enforcement of an order against individuals not named in the underlying order. 159 Vt. at 146 (stating that "V.R.C.P. 65(d) sets forth the elements necessary for enforcement of an injunction against persons unnamed in the order," and in such cases, "[p]laintiffs must show that defendants acted in concert or participation with named parties, that the order was specific and unambiguous, and that they violated the order with actual knowledge of its mandate" (emphasis added)); id. at 145 (recognizing that "[d]ecisions under the federal rule and similar state rules have uniformly allowed the enforcement of injunctive decrees against unnamed parties with actual notice, where they meet the other criteria

5

of Rule 65(d), despite the absence of formal service"). That case does not hold, as Mr. Gerlach asserts, that "[t]he burden is on the party seeking a finding of contempt to prove that the other party intended to violate the court's order by their actions." Mr. Gerlach also misstates the holding of Hale v. Peddle, 160 Vt. 621 (1993) (mem.), by omitting a key line from that case. The court there cited Spabile and recognized that there must be a showing that a party is able to comply with a court order before they can be held in contempt of that order. Id. at 622. We expressed a similar rationale in Mayo v. Mayo, cited by Mr. Gerlach. 173 Vt. 459, 463 (2001) (holding that contempt could not lie where defendant was powerless to comply with court order). There is no showing here that Mr. Gerlach was unable to comply with the court's order. See Musella, 818 F. Supp. at 606 ("The party seeking a finding of contempt need not show that violation of the order was willful, and good faith is not a defense. Nor may the alleged contemnor rely on his own inadvertence, misunderstanding or advice from counsel." (citing cases)).

With respect to notice, the trial court recognized that "as [a] general rule before a person may be held in contempt for violating a court order, the order should inform him in definite terms as to the duties imposed upon him" and "[t]he order must be specific and definite so that it leaves no reasonable basis for doubt as to its meaning." Pownal Tanning Co., 142 Vt. at 605. It considered the language of the preliminary injunction specific and definite and concluded that Mr. Gerlach violated its terms.

The court acted within its discretion in finding Mr. Gerlach in contempt here. The injunction plainly prohibited the Gerlachs "from taking any steps to interfere with [Mountain Top's] efforts to post signage and other appropriate steps designed to reasonably protect the safety of trail users." The court found that Mountain Top used a rope at trailheads to signal that a trail is closed, a common practice and one that Mountain Top had used for twenty years. Mountain Top presented evidence that it closes trails to protect the safety of trail users and it described the risks that arise when individuals unilaterally remove its ropes. The court found that Mr. Gerlach knew the purpose of the rope across the trailhead and removed it. Mr. Gerlach may disagree with the use of a rope to mark closed trails, and disagree about what constitutes an appropriate safety step, but these disagreements do not establish an abuse of discretion, or justify his violation of the injunction. See Meyncke v. Meyncke, 2009 VT 84, ¶ 15, 186 Vt. 571 (mem.) (explaining that arguments which amount to nothing more than disagreement with court's reasoning and conclusion do not make out case for abuse of discretion). The court was not required, moreover, to credit the testimony of his expert witness regarding the safety of using a rope to mark a closed trail, as Mr. Gerlach suggests. See Lofts Essex, LLC v. Strategis Floor & Decor Inc., 2019 VT 82, ¶ 23, 211 Vt. 204 (recognizing that "as the trier of fact, it is the province of the trial court to determine the credibility of the witnesses and weigh the persuasiveness of the evidence," and "[a]ccordingly, [a] court is not required to credit an expert witness's opinion whenever the witness is qualified to testify as an expert" (quotation omitted)). As the court found, moreover, using ropes to mark a closed trial is a well-established practice—used here for twenty years—and those individuals traveling on snowmobiles, such as the Gerlachs, have the ability to navigate around the rope. "So long as a reasonable basis for the discretionary action of the trial court is shown to be present, this Court will not interfere." Brooks v. Brooks, 131 Vt. 86, 93 (1973).

6

Finally, the Gerlachs argue that the court's interpretation of the preliminary injunction conflicts with their property rights and the rights afforded to Mountain Top in its easements. While styled as a challenge to the court's interpretation of the preliminary injunction, it is in essence a collateral attack on the terms of the preliminary injunction, which is not properly before us in this appeal. See Socony Mobil Oil Co. v. N. Oil Co., 126 Vt. 160, 164 (1966) (explaining that "a contempt proceeding based on the violation of a court order does not open to reconsideration the legal or actual basis of the order so as to result in a retrial of the original controversy").

Affirmed.


BY THE COURT:


_____
Harold E. Eaton, Jr., Associate Justice


_____
Nancy J. Waples, Associate Justice


_____
Mary L. Morrissey, Superior Judge,
Specially Assigned