# Socony Mobil Oil Company, Inc. v. Northern Oil Company, Inc. and Massena Iron and Metal Company

[ 225 A.2d 60 ]

October Term, 1966

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed December 6, 1966

*Coffrin & Pierson* for plaintiff.

*Lisman & Lisman* and *Kissane & Heald* for Northern Oil Company, Inc.

**Smith, J.** This is an appeal from a contempt order issued from the Chittenden County Court of Chancery by the defendant Northern Oil Company, Inc. Involved here is the removal of certain tanks for the storage of oil products located on property owned by the plaintiff, Socony Mobil Oil Company. The tanks, originally owned by Socony, were sold in 1960 to the Massena Iron and Metal Company. Some three weeks after such sale, they were in turn sold by Messena to the defendant Northern Oil Company. There has been continual litigation between the parties to this proceeding relative to the use and removal of such tanks since 1960, most of which is not relevant to the questions now before us.

On August 22, 1963, a decree was handed down by the Chittenden County Court of Chancery, which is pertinent to the considerations here. Paragraph 5 of the decree provided:

"Forthwith, upon the entry of this decree, the plaintiff shall take down or remove its fence so that the said tanks may be removed over the place where the fence was erected. The plaintiff shall give notice in writing to the defendant Northern Oil Co., Inc. when said fence has been taken down, and the said defend-

ant shall forthwith proceed to remove the said tanks and shall complete the work thereof promptly, and in no event more than sixty days from the date of receipt of said notice."

Written notice was received by the Northern Oil Co., Inc. on September 12, 1963, from the plaintiff that a portion of the fence surrounding the tank farm had been taken down. On April 8, 1965, the plaintiff brought a contempt petition against the defendant for failure to remove the tanks in accordance with the decree. Upon hearing, and after making findings of fact, the Chancellor made an order adjudging the defendant to be in contempt of the decree of the court. The order allowed the defendant to purge the contempt by the removal of the tanks on or before October 15, 1965. Upon failure to remove said tanks as provided in the order above, the defendant was ordered to pay a fine in the amount of $5,000.00.

█ The first contention of the defendant is that the Chancellor had no authority to enter an order finding the defendant in contempt for the reason that a violation of the decree did not occur after the service of the decree on the defendant. Although the record makes clear that the defendant was fully aware of the contents and direction of the decree of August 22, 1963, and in fact, at one time sought to have it modified, no actual service of the decree was made upon it until January 20, 1965.

12 V.S.A. §122, provides, in part:

"When a party violates an order . . . . . after service of such order upon such party, contempt proceedings may be instituted against him."

It is defendant's assertion that its violation of the decree of August 22, 1963, if any, under its terms, occurred on November 12, 1963, that date being sixty days after it received notice from the plaintiff of the fence removal. It alleges that no violation occurred after the date of January 20, 1965 when service of the decree was made on it, and that the remedy of contempt was not available to the plaintiff.

What the defendant conveniently ignores is that at the time service of the decree was made on it, it also had previously received the notice required under the decree from the plaintiff that a portion of the fence had been removed. This notice of fence removal from the

plaintiff could not put defendent in a position of non-compliance with the decree if he did not remove his tanks within sixty days thereafter, when the decree had not been served on it, but the situation changed once the service was made.

Once service of the decree was made, then the notice of the removal of the fence came into full operation and effect. At the time that the defendant had been served both with the decree and with the notice of the fence removal, he had sixty days to remove the tanks or be in violation of the order. The effective date of both the notice and the service was January 20, 1965, and defendant's failure to remove the tanks within sixty days after that date gave the Chancellor jurisdiction of the petition in contempt brought by the plaintiff.

■ The requirement of service of the court order, provided for in 12 V.S.A. §122 is merely a procedural prerequisite to the institution of contempt proceedings. The defendant was actually in contempt of the court of chancery sixty days after it received the notice of removal, but it could not be subjected to contempt proceedings under the statute until actual service had been accomplished.

■ The second point briefed by the defendant is that the Chancellor should not have made the contempt order without having made a determination of whether defendant was unable to obey the decree in this cause, by reason of the plaintiff's failure to perform. Defendant's contention here, as below, is that the 120 ft. of fence removed by the plaintiff from around the tank farm, was insufficient to allow the defendant to comply with the order. As admitted by the defendant, the burden was on it to show the impossibility of compliance with the order. *In re Merton W. Sage,* 115 Vt. 516, 518, 66 A.2d 13. *Andrews* v. *Andrews,* 62 Vt. 495, 502, 20 Atl. 817.

Defendant never requested the plaintiff to remove additional fence so that it could comply with the order of the Chancellor. No motion was ever made to the Chancellor to modify the order relative to the removal of fencing, so that compliance could be made with the order to remove the tanks by the defendant. The only evidence offered by the defendant in support of its contention that it was unable to obey the decree was by the witness Horrigan, who testified that it would be impossible to remove the tanks through the 120 ft. gap in the fence.

■ Horrigan, however, was never employed by the defendant to remove the fence. Missing from the record before us is any evidence that the defendant ever made any effort to comply with the order to remove the tanks from the premises of the plaintiff. The inability, without fault, to render obedience to an order or decree of a court is a good defense to a charge of contempt, but such a defense is effective only where, after using due diligence, the person is still not able to comply with the order. *United States* v. *Fleischman,* 339 U.S. 349, 363, 94 L.ed. 906; 17 Am. Jur. 2d. Contempt, §51, p. 53.

■ In the absence of a showing of due diligence on the part of the defendant to comply with the order of the court, the Chancellor was not called upon to make a determination whether defendant was unable to obey the decree in this cause by reason of the plaintiff's failure to perform.

■■ Defendant next briefs its contention that Paragraph 5 of the decree was too vague and indefinite to warrant a contempt order thereon. The pertinent part of said paragraph is:

"Forthwith, upon the entry of this decree, plaintiff shall take down or remove its fence so that the said tanks may be removed over the place where the fence was erected. . . ."

Defendant seeks to argue that this part of the decree is indefinite on the length of the fence which the plaintiff was ordered to remove. But a contempt proceeding based on the violation of a court order does not open to reconsideration the legal or actual basis of the order so as to result in a retrial of the original controversy. 17 Am. Jur. 2d. Contempt, pp. 42, 46.

"It would be a disserving to the law if we were to depart from the long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a trial of the original controversy. The procedure to enforce a court's order commanding or forbidding an act, should not be so inconclusive as to foster experimentation with disobedience." *Maggio* v. *Zeitz,* 333 U.S. 56, 69, 92 L.Ed. 476.

Defendant takes nothing by this exception.

Defendant has next briefed its exceptions to various findings of the Chancellor on the grounds that they are not supported by the evidence. Defendant's first exception is to that part of Finding 9 in which the Chancellor found that the section of the fence taken down by plaintiff under the decree "was in the same location and in the same distance as was removed by the defendant Northern Oil Co., Inc. when it first commenced to remove the tanks from plaintiff's land in the year 1960."

Doubtless, the reference here made by the Chancellor was to actions taken to fence removal at a prior time in this long drawnout litigation between the parties, which proceedings had been heard by the same Chancellor, and of which prior proceedings he took judicial notice. In any event, it is an unessential finding, containing only background references, and does not relate to an essential element of the case. If such finding is unwarranted, which we do not decide, it would not be basis for reversal. *Appliance Acceptance Co.* v. *Stevens,* 121 Vt. 484, 490, 160 A.2d 888.

■ Findings 14, 20 and 21, excepted to by the defendant, are to the effect that defendant at no time gave notice that insufficient fence had been taken down. Defendant's claim is that such notice had been given by witness Horrigan by his testimony in previous hearings and previous cases, according to his evidence in the contempt hearing.

The defendant had the burden of proving impossibility of compliance with the order, as well as that it had diligently attempted to comply with it. It apparently does not dispute that if it attempted to comply with the order, it had a duty to inform the plaintiff that an inadequate amount of fence had been taken down by it to allow the defendant to remove the tanks. Defendant claims that the testimony of Horrigan established its burden of proof on the giving of such notice.

Horrigan's evidence was only that he had testified that such fence removal was inadequate in previous hearings of unspecified time and nature. There is nothing to show that such testimony was given since notice was received by the defendant from the plaintiff that it had removed the 120 ft. of fence. Of even more importance, the witness Horrigan had no representative connection with the defendant, nor even a contractual relationship with such company. For the Chancellor to have found on this evidence that the defendant had communicated to the plaintiff a wish to have additional fence removed would

have called for the exercise of imaginative speculation rather than a determination based upon evidence. No error is found in the Chancellor's finding that defendant at no time gave notice to the plaintiff that insufficient fence had been taken down.

 Defendant has also expected to Finding 26, which we quote:

"Northern Oil Co., Inc., if sufficient fence has not been removed to enable it to complete the removal of the tanks within the time set forth in Paragraph 25 hereof, may remove such fence on the Georgia side of the tank farm as is necessary for the removal operation and shall immediately, upon the completion of the tank removal, restore such fence to the condition it was in prior to removal."

Although Finding 25 is not excepted to, it is necessary that it be quoted for an understanding of Finding 26:

"25) To purge itself of contempt, the defendant Northern Oil Co., Inc., shall immediately commence the removal of said tanks, and complete said removal on or before October 15, 1965; and upon failure to do so, shall pay a fine in the sum of Five Thousand Dollars ($5,000.00)."

It was the plain and obvious intent of the Chancellor in Finding 25 to give the defendant an opportunity to purge itself of the contempt of court which the Chancellor found (F. 24). Finding 26 gave the defendant the right, which it had not previously been granted, to remove whatever fence it considered necessary to remove the tanks, and upon a side of the tank farm which its own witness had testified would provide the most convenient access to such tanks.

Defendant first claims that Finding 26 is a finding that plaintiff had not previously removed sufficient fence for defendant to remove the tanks and that therefore, the Chancellor could not have found it in contempt. But the Chancellor had found (F. 20) that if such insufficiency did exist, the defendant had not made that fact aware to the plaintiff and we have sustained such finding. Defendant also contends that in Finding 26 the Chancellor should have used the words "Georgia Shore Road" rather than the wording "Georgia Shore" to describe the new area where defendant was granted the right to remove fencing to purge itself of contempt. Both descriptions were used in the pro-

ceedings below, nor do we think that defendant would have been in any way handicapped if it had attempted to purge itself of the contempt in the light of Finding 19 that the plaintiff stood ready to remove any portion of the fence upon request.

The defendant was given the opportunity by the Chancellor to purge itself of the contempt which the Chancellor found it had wilfully created. It did not choose to do so but continued in its experimentation in disobedience of the court order so amply demonstrated by the record.

*The entry is "Decree affirmed."*