STATE OF VERMONT

ENVIRONMENTAL COURT

| | |
|---|---|
| Secretary, Vermont Agency of Natural Resources, Plaintiff, } } } | |
| v } } } | Docket No. 163-7-00 Vtec |
| Leo Knapp, Respondent. } | |

Decision and Order on Petition for Contempt

On July 27, 2000, the Vermont Environmental Court, Judge Alan W. Cheever presiding, issued an Emergency Order requiring Respondent to provide each household with bottled drinking water, to have a well drilled, installed and inspected, to submit test results, and to abide by all permits. The Secretary petitioned for Respondent to be found in contempt of the Emergency Order, and the Court held an evidentiary hearing. The Secretary is represented by Catherine Gjessing, Esq.; Respondent represented himself.

Respondent Leo Knapp owns property in Corinth, Vermont subject to Land Use Permit #3R0692, as amended. In 1993, the permit had allowed the subdivision of an 11.8-acre lot owned by Respondent and Gene Danforth into an 11.2 acre lot now owned by Respondent and a 0.6-acre lot now owned by Diane Danforth. The permit approved the 11.2-acre lot for an existing auto repair shop and an existing mobile home residence. Condition 6 of the permit required the destruction of an existing shallow well. Permits also issued in early 1993 by the Agency of Natural Resources (Water Supply and Wastewater Disposal Permit WW-3-9123 and Subdivision Permit EC-3-9232) approved the project for a water supply from a drilled well to be located as shown on the approved plans and which meets or exceeds the isolation distances required in the Environmental Protection Rules. The drilled well was to serve the auto repair shop and residence on the 11.2-acre parcel, and a residence on the 0.6-acre parcel. Additional conditions of these permits required the water yield and water quality to be tested prior to use of the well.

By some time in 1997, Respondent had placed three mobile homes on the 11.2-acre lot and had converted part of the garage building into an apartment. The drilled well had been drilled in the wrong location and was located on the 0.6-acre parcel. With more than two mobile homes, Respondent's property was a mobile home park for which Respondent had not applied for or received a permit.

In July of 2000, Respondent no longer had access to the drilled well located on the Danforth property. He proposed to drill a new well on the 11.2-acre lot. His engineer, Robert Carter, spoke with the Regional Engineer, who informed him that Respondent would have to apply for a Water Supply and Wastewater Disposal Permit before drilling a new well. As of July 14, 2000, the water supply for the mobile homes and garage building was connected to a shallow well that did

not meet basic engineering standards and did not meet isolation distances to septic systems, which have failed in the past. The Regional Engineer directed Respondent's engineer that Respondent would have to provide the residents at the mobile homes with potable drinking water until an approved water supply could be installed.

On July 18, 2000, Respondent applied for the Mobile Home Park permit and Water Supply and Wastewater Disposal Permit necessary to drill a new well; it was approved the same day (MH-3-9001 and WW-3-9123-1). As of July 25, 2000, Respondent had not provided the residents with potable drinking water pending the drilling of the new well. On July 26, 2000, Respondent provided some of the residents with four gallons of bottled water.

The July 27, 2000 Emergency Order issued by the Court directed Respondent 1) immediately to provide each resident in each household with a minimum of two gallons of bottled drinking water per day, as requested by each resident, until such time as an approved well is installed and Respondent receives written notice from the Water Supply and Wastewater Management Division of the Agency that he may stop doing so; 2) to hire a well driller; 3) to install a drilled well and connect it to the water distribution system according to the approved plans, and to have it inspected by a registered professional engineer, who shall report in writing that the work was completed in accordance with the approved plans; and 4) to collect water samples and submit copies of the test results to the Water Supply and Wastewater Management Division of the Agency, showing that the water meets or exceeds the potable water standards in Chapter 21 of the Environmental Protection Rules, prior to the use of the water supply. No evidence was presented of the service of the underlying order on Respondent, although he undoubtedly had actual notice of it. Without service, in a civil case the Court cannot find contempt. Socony Mobil Oil Company, Inc. v. Northern Oil Company, Inc. et al., 126 Vt. 160 (1966). However, we will proceed to consider whether the emergency order should be amended or additional requirements imposed.

As of early September, 2000, the well had been drilled, and water was being supplied from it to the tenants. Respondent had supplied bottled water from time to time until that time, but had discontinued the bottled water once he began to supply water from the well. He did testing for some contaminants, and dosed the well with chlorine, but did not do the follow-up testing required by Paragraph D of the Emergency Order, nor did he supply a report of a Vermont-registered professional engineer that the well was installed or connected in an approved manner. He was engaged in a prolonged dispute with the tenants in which he sought to evict them and they sought to withhold rent. If the tenants all leave and the property no longer qualifies as a mobile home park, the permitting requirements applicable to it will change.

Accordingly, it is hereby ORDERED and ADJUDGED that the Emergency Order in this matter is amended to require Respondent to report in writing on or before seven business days from his receipt of this order to Attorney Gjessing and the Regional Engineer regarding whether any tenants remain at the park. He shall supply bottled water according to the Emergency Order to any remaining tenants until paragraphs C and D of the order are fully complied with. If no tenants remain, the parties shall report to the Court in writing on or before July 5, 2001, as to whether the order may be amended or should remain in effect, or whether it may be resolved in some other way.

Done at Barre, Vermont, this 15th day of June, 2001.


_____
Merideth Wright
Environmental Judge